McIlvaike, J.
The plaintiff in error claims that by the- *396 rules of law, which, declare and define the liabilities of persons who erect or maintain nuisances upon their estates, the liability of the defendant, Cheadle, for the injury complained of, may be ascertained. The rules relied on are— 1. That an owner of real estate whereon a nuisance exists can not exonerate himself from liability for injuries which may, at any time, result therefrom, by parting with the title ■or possession of the premises. 2. That a lessor who, as between himself and the lessee, is bound to keep the leased premises in good order, is liable for a nuisance which may originate during the continuance of the lease.
¥e do not think the defendant’s liability can be asserted under either of these rules.
Whether the noxious structures existed at the time the lessees entered into the possession of the store-room does not appear; but however that may be, it is clearly stated that the injury complained of was inflicted during their possession. And that being the ease, whether the nuisance ■(conceding the structures in question were such) was erected prior to the possession of the lessees, or originated afterward, the liability of the defendant, Cheadle, existed only in favor of persons standing strictly upon their rights as strangers to the property, and as to whom it was the duty of the defendant to remove or repair the structures. The duty here referred to does not arise upon the contract of lease, but is one which the law imposes upon the owners of property, and is expressed in the maxim, “ sic utere tuo ut alienum non laedas.” This principle ordinarily applies only to persons in possession, and having control of the property, either as owners or tenants. But in case a landlord undertakes with his tenant to keep the premises-in repair, having thus reserved the control to the extent necessary for making repairs, his duty to the public in relation to the property is not affected by the lease, and he remains responsible, under the doctrine of the above maxim, for defects arising from the want of repairs during the continuance of the lease. But the plaintiff was not a stranger, .standing strictly upon his rights as such. Indeed, the nox *397 ious fixtures complained of did not amount to a nuisance at all in the legal sense of the term. They were not erected or maintained in violation of any right of the public, or of any member of the public. They were unsafe, it is true, but did not tend to endanger the person or property of strangers to the premises. They were unsafe to persons and things which, might be for the time being in the storeroom ; but no person or thing could rightfully be there, except by the permission and upon the request of the lessees. No one doubts that the plaintiff was rightfully in the room at the time of the injury, but his only right was that of a customer of the tenant. Whatever, therefore, may be the rights of the plaintiff as such customer of the tenant, it is quite clear that he has no remedy against the lessor, as the erector or maintainer of either a public or private nuisance.
Nor can the plaintiff hold the lessor liable to him for the injuries sustained upon his contract of lease with the tenant in possession. In disposing of this question, we have regarded Mattison as standing in the shoes of the original lessees.
The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in'which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes this rule. There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the lessee intends to put them. If they be unsafe or unfit, it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so. And if the landlord warrants their fitness, the covenant stands for the benefit of the lessee and not for the benefit of strangers to the contract. And so, if the lessor engages with the lessee, to keep the premises in repair, a^ breach of the engagement gives a right of action only to the lessee. *398 But whatever may be the rights and duties respectively of landlord and tenant, as between themselves, the latter can not, by the terms of the lease, be discharged from the duty to his guests, and in a greater degree to his customers, of caring for their safety. And while such persons may reasonably expect the exercise of care for their safety from the person who invites them, they have no right to expect like care from his landlord, with whom they are not in privity. Hence, it is well stated by Sherman and Redfield, in their work on Negligence (section 503), that the guests or customers of the tenant must seek redress for injuries, ■caused by defects in the premises, from the tenant and not from the landlord, even though the defects existed when the lease was made; for if they had not entered the premises at the request of the tenant, or under his license, they would not have suffered injury.
To what extent the tenant might have a remedy over against his landlord, where fraud was practiced in the letting, 'or where the defect resulted from want of repairs which the landlord engaged to make, we are not now called upon to decide.
It is also claimed that Cheadle’s knowledge of the use ■to which the lessees intended to put the room, and of the fact that the cornices, shelving, and fixtures were insecurely fastened to the wall of the building at the time they were constructed, is sufficient to render him liable to the plaintiff’ for the injuries received by him.
It will be observed that there is no complaint as to the manner in which the building itself was constructed, and also,that the noxious fixtures were put in the buildings in pursuance of the contract of lease.
The fact that Cheadle had agreed with the lessees to construct the fixtures in a manner safe and proper for the sale of dry-goods and groceries, and the fact of his failure to perform his contract, are not,elements in the plaintiff’s right to recover. The plaintiff had no interest in that contract, or in the breach of it. The only question before us now is—"Was Cheadle’s neglect or failure to make the fix *399 •tures secure and safe, knowing that the room was intended to be used as a place of resort for the customers of the tenants, a breach of any duty which he owed to such customers ? If so, a like duty to them would have been neglected, if any other person, with like knowledge, had carelessly put up the fixtures; and it would hardly be contended that if a carpenter, who had no interest in the premises, had been such other person, a right of action would have accrued against him and in favor of the plaintiff. We have already stated that Cheadle, by reason of his ownership of the room, owed no duty to the plaintiff, which was violated by mere carelessness in the construction or fastening of these fixtures ; nor do we think that a legal •duty, which would have been violated by neglect to exercise ordinary care, was imposed upon him by his knowledge that the room was to be kept open to the customers ■of the tenants.
What would have been the responsibility of Cheadle, •either civilly or criminally, if these fixtures had been intended by him as a trap or snare for the customers of the tenant, or if he had been guilty of such gross negligence as would show an utter disregard for the lives or safety of .such customers, are questions not presented on this record. There is no averment of a design on the part of the defendant to inj ure such customers. That such injury was within the range of possibility, is clear enough—it took place; but in the absence of averment, we can not say that •danger was so imminent as to indicate recklessness on the part of defendant. Indeed, it is difficult to conceive how ■an injury to customers could result from ordinary shelving, however carelessly constructed and fastened. For aught that appears in this record, these fixtures may have been in use for years, not only without injury, but without suspicion of possible injury to such customers. ..The averments that these shelvings were carelessly and insecurely fastened to the walls of the store-room, and that Cheadle had knowledge of such fact, is by no means equivalent *400 to an averment that he had reasonable grounds for apprehending that customers in the store-room would be in danger of injury therefrom.

Judgment affirmed.

"Welch, C. J., "White, Rex, and Gtlmore, JL, concurred.